### JESSE COLEMAN v. THE STATE.

#### No. 1790. Decided January 25, 1899.

**Wife Murder—Murder in the First Degree—Evidence Sufficient.**

See opinion for evidence stated which is held sufficient to support a verdict and judgment of conviction for murder in the first degree, with the penalty assessed at death.

APPEAL from the District Court of Falls. Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for murder in the first degree; penalty, death.

The indictment charged appellant with the murder of Candis Coleman, on the 1st day of April, 1898, by killing her with a pistol. Candis Coleman was the wife of appellant. The parties were negroes.

The important facts proved on the trial are stated in the opinion below.

No brief on file for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death. There are no bills of exception or assignment of errors in the record. The first and second grounds of the motion for new trial are predicated upon the ruling of the court admitting and rejecting testimony, and reference is made to bills of exception numbers 1 and 2. Said bills are not in the record. The third ground alleges that the court erred in allowing State's counsel to argue before the jury the probability of improper conduct between defendant and the woman who was rooming at defendant's house at the time of and immediately before the commission of the homicide, because there was no evidence or intimation of such conduct on the part of defendant, as shown by bill of exception number 3. Bill number 3 is not in the record, if such bill was reserved. The fourth and fifth grounds of the motion relate to the sufficiency of the evidence to support the judgment of conviction. The statement of facts discloses that appellant killed his wife on the morning of April 1, 1898; that, about a week prior to the time of the killing, she had left his bed and board, and, by his testimony, that she had gone off with another man. On the morning of the homicide, the wife had returned to their

residence accompanied by a livery wagon, for the purpose of moving some of the contents of their residence to the town of Mexia, a distance of about seven miles. Defendant at the time was at work in the field, some mile and a half distant. He was notified of the return of his wife to their residence, and immediately took his mule from the plow, and proceeded home. En route he stopped at the store of Forbes & Reeves, went into the store and got a pistol, and proceeded home. Upon arriving there, he went into the house, where his wife and the wagon driver were taking down some of the furniture for the purpose of loading it on the wagon. He ordered the driver from the house, and his wife undertook to leave also, but was prevented by defendant. As soon as the driver was outside the house, defendant fired three or four shots, two of which proved fatal. He came out into the yard, and about this time Mr. Griggers and Mr. Forbes came up, Griggers being a little in advance. Defendant remarked, as he came out of the house, "Well, boss, I have killed her." Griggers testified that there was a woman living in the house with defendant at the time of the killing. She was cooking for Mr. Forbes. On the day of the killing, she was at the house when deceased got there, and immediately left, and was within about 100 yards of the house at the time defendant shot his wife, going in the direction of Mrs. Forbes'. Forbes testified that defendant and his wife had been separated just one week, when she came back, and was killed. Steen, the deputy sheriff, testified to statements made to him by defendant while under arrest and after being cautioned. "He told me he loved his wife, and he killed her; that, if she could not do him any good, she should never do anyone else any. He said he got the pistol out of the store of Messrs. Forbes & Reeves as he went up there. He told me he went down to his house with the intention of killing them; that he killed her because he loved her and she would not live with him; and also said, 'If that man had been there, I would have killed him.'" Defendant testified, in his own behalf, that he went by the store of Forbes & Reeves and got a pistol; that he had been informed of the fact that his wife was at home, and he thought she had brought with her the man with whom she had left; that he took the pistol up there anticipating trouble with the seducer of his wife. When he entered the house, he spoke to her, and told her that she could not take all of the things out of the house. She said they were hers, and that she was going to have them, and she started out of the house, and as she did so defendant stepped in front of her, and she put her hand either in her bosom or at her bosom, and defendant says, "I thought she was going to draw a razor and cut me. I had missed my razor the day before she left me, when I started to shave, and I thought she had taken it, and had it then, and was going to cut me, and I shot her. I do not know how many times I shot her. I would not have shot her at all, if she had not made the demonstration with her hands. I loved her, and had no idea of killing her when I went to the house that morning. After I shot her, I went out in the yard, and saw the white folks there, and told them what I had

done." Defendant stayed there until late that evening, and then went off. He further testified that he never told anyone of this demonstration on the part of his wife, and his suspicion that she had a razor, until after he was in jail, when he mentioned it to his attorney. All of the witnesses who spoke of the matter agree that defendant was not excited at the time. On this state of facts, the court charged the law applicable to murder in the first and second degrees, manslaughter, and self-defense. The jury have found that the evidence supports a killing upon express malice, and we are not prepared to say that they were not authorized to so find. The judgment is affirmed.

*Affirmed.*